## SLAUGHTER v. DANIELS.

### No. 5006.

Court of Civil Appeals of Texas.
Amarillo.

March 20, 1939.

Rehearing Denied April 24, 1939.

Loyd R. Kennedy, of Morton, and Nelson & Brown, of Lubbock, for appellant.

Homer L. Pharr, of Lubbock, for appellee.

FOLLEY, Justice.

The appellant, C. C. Slaughter, filed this suit against the appellee, J. C. Daniels, for the title and possession of certain land in Cochran County, Texas; for the cancellation of a sales contract upon the land; for removal of cloud from the title; and for damages in the sum of $300 by reason of the alleged conversion of ten bales of cotton by the appellee. The trial court, without the intervention of a jury, rendered judgment for the appellant for the title and possession of the land, for cancellation of the contract of sale and for removal of cloud from title, and denying all other relief prayed for. The appellant contends that in addition to the relief given him he was further entitled to his alleged damages.

The basis for this law suit was a contract of the date of August 4, 1933, entered into between the appellant and the appellee for the sale by appellant, and the purchase by appellee, of 160 acres of land in Cochran County, Texas, known as Tract No. 5 of the C. C. Slaughter Block No. 1. The contract was what is commonly denominated a "Crop Payment Contract" which provided that the consideration was to be 220 bales of cotton of standard size and quality, ten of such bales of cotton to be delivered each season at the expense of the appellee. The contract further provided: "As soon as the cotton is gathered it shall be ginned at the nearest gin, and, when ginned, every other bale is to be delivered by Purchaser at Purchaser's expense to Seller's authorized agent in some warehouse designated by Seller in Cochran County until there have been delivered to Seller's agent ten bales of such cotton on or before the 1st day of February, 1934 and there shall be delivered in such manner ten bales of cotton during each season thereafter on or before the 1st day of February following such season. The delivery of said cotton to Seller's agent shall be made, together with ginning tickets thereon, and such cotton shall be free from all ginning charges, yard fees, mortgages or liens of any character or description * * *."

Another pertinent provision of the contract was as follows: "It is distinctly agreed and understood that neither the legal nor equitable title to the property herein described shall pass or vest in the Purchaser by virtue of this contract, and that all of the obligations herein agreed to be performed by the Purchaser shall be construed as conditions precedent to the passing of any legal or equitable title in the Purchaser, and the failure on the part of the Purchaser to perform any of said conditions will give the Seller the right to forfeit this contract, and upon the forfeiture of same, the Seller will be entitled to the immediate possession of said property without giving the Purchaser any notice, and will be entitled to retain, as liquidated damages here and now agreed upon for the breach of the conditions of the said contract, all bales of cotton and other crops which will have been delivered to the Seller at the time of said forfeiture, all improvements placed on said property and all growing crops thereon."

Pursuant to the terms of this contract the appellee immediately entered into possession of the land and premises and farmed the same during the crop years of 1934, 1935, 1936 and 1937. There is no question raised as to any breach of this contract before the crop year 1937. During this year the appellee planted 150 acres of the land in cotton and raised twenty-one bales of cotton. These twenty-one bales were gathered and ginned by the appellee, after which he abandoned the contract, sold the cotton and retained the proceeds. The appellant alleged that under the terms of the contract ten bales of this cotton belonged to him, and that the value of such cotton was $300.00. He asserted that he was not only entitled to cancel the contract and recover the title and possession of the land but that he was entitled to a judgment against the appellee for the value of the ten bales of cotton. The trial court sustained an exception to that portion of appellant's petition seeking damages for the alleged conversion of the ten bales of cotton, and this action of the court is the only assignment of error presented for our determination.

We call attention particularly to the latter portion of the language last quoted from the contract in question with reference to the rights of the appellant in the event of forfeiture. It will be noted that the parties therein expressly agreed upon what property the appellant might retain in the event of a forfeiture. The stipulation included all cotton theretofore delivered to the appellant but it did not include cotton which had not been delivered at the time of the forfeiture. This provision is plain, certain and definite. In unmistakable terms the appellant agreed to accept in full and complete satisfaction of any breach of the contract all the cotton and other crops delivered to him at the time of the forfeiture, together with all improvements placed on the property and all growing crops thereon. In other words, the property enumerated in the event of a breach was a definite retribution which the appellant agreed to accept without additional compensation. Having obligated himself to accept such property in full satisfaction of his damages by reason of a breach of the contract, may he now seek additional remuneration? This question is answered in 13 Tex.Jur. 119, para. 42, in the following language: "A stipulation contained in a contract of sale

to the effect that a sum of money shall be paid to the seller in case he fulfills his obligations and the purchaser fails to perform his obligation to purchase, carries with it the necessary implication that the seller binds himself, by the stipulation, to accept such sum as compensation for his loss resulting from the happening of the contingency named."

Again, in 43 Tex.Jur. 132, para. 80, it is said: "But when the vendor has agreed to accept a certain sum in satisfaction of a breach of contract by the purchaser, he is not entitled to a greater sum nor to specific performance."

Another very cogent reason why the appellant should not be allowed to recover for the value of the ten bales of cotton is the fact that such a recovery would be a remedy inconsistent with, and destructive of, appellant's right of rescission. The rule governing such a situation is succinctly stated in the case of Gustafson v. American Land Co., Tex.Civ.App., 234 S.W. 244, 245, in the following language: "The vendor in an executory contract for the sale of land, in which the vendor's lien is reserved to secure the purchase price, has the option, if the vendee defaults in payment, of rescinding the contract and recovering title, or of enforcing specific performance and recovering the unpaid purchase price with foreclosure of his lien; either remedy being pleaded as the alternative of the other. He must finally, however, elect between the remedies, standing upon one and abandoning the other."

Possibly a little more accurate statement of such rule is found in Mozoch et al. v. Sugg, Tex.Com.App., 254 S.W. 770, 773, as follows: "It will be observed * * * that when it is said that a vendor loses his right of rescission, it is clearly meant that he loses that right, provided the vendee take advantage of his action and pays the purchase money; in other words, the action of the vendor in proceeding for the purchase money may be construed to be an election, which will prevent a rescission only when the vendee takes advantage of that election and offers to pay the consideration due. Of course, in such a case, the vendee being willing to do the very thing which the vendor by his action has declared he wanted done, the vendor will not be permitted to change his mind and attempt to hold the land, instead of accepting the money tendered him by the vendee."

In any event if the appellant herein was permitted to recover for the value of the cotton, which, in effect, carries the same status as purchase money, there would then remain, after the collection or payment of such judgment, no valid cause to rescind the contract, as such payment would place the position of the appellee again in good standing and remove the breach of the contract upon which the appellant relies for rescission.

The trial court having allowed a rescission of the contract as prayed for and accepted by the appellant, it is our opinion there was no error in sustaining the exception to that portion of appellant's petition seeking damages for the value of the cotton in question. Hill v. Preston et al., 119 Tex. 522, 34 S.W.2d 780; Fleming v. Lon Morris College et al., Tex.Civ.App., 85 S.W.2d 276, writ refused; Roth et al. v. Connor, Tex. Civ.App., 25 S.W.2d 246; Atteberry v. Burnett et al., Tex.Civ.App., 114 S.W. 159; Seamans Oil Co. et al. v. Guy et al., 115 Tex. 93, 276 S.W. 424; Walls et al. v. Cruse et al., Tex.Com.App., 235 S.W. 199; Huffhines v. Bourland, Tex.Com.App., 280 S.W. 561; Golden West Oil Co. No. 1 et al. v. Golden Rod Oil Co. No. 1 et al., Tex. Civ.App., 285 S.W. 631, affirmed, Tex.Com. App., 293 S.W. 167.

The judgment is affirmed.